BOOTH NEWSPAPERS, INC v WYOMING CITY COUNCIL

Docket No. 101847. Submitted August 19, 1987, at Grand Rapids. Decided May 16, 1988.

Following a bench trial in the Kent Circuit Court, the trial court, Robert A. Benson, J., found that defendant, Wyoming City Council, violated the Open Meetings Act on four occasions between July 28, 1986, and April 14, 1987. The court issued a permanent injunction, awarded plaintiff, Booth Newspapers, Inc., attorney fees and costs of $23,831.02 and retained jurisdiction to supervise compliance with its order. Defendant appealed claiming no violation of the OMA occurred. Plaintiff cross-appealed seeking a modification of the award for attorney fees and costs. The Michigan Municipal League was granted leave to file an amicus curiae brief.

The Court of Appeals *held:*

1. Section 8(h) of the OMA was not construed too narrowly by the trial court. Section 8(h) authorizes closed sessions to discuss matters which are exempt by statute from disclosure or discussion, or which are reasonably related thereto. The scope of the discussion in closed session must legitimately relate to legal matters, and not bargaining, economics, or other tangential nonlegal matters. Section 8(h) of the OMA did not authorize the city council's holding of a closed session to receive an oral opinion from a former city attorney hired by the city council as special counsel. The area of discussion at the closed sessions went beyond receiving and discussing the attorney's legal ad-

REFERENCES

Am Jur 2d, Attorneys at Law §§ 118 *et seq.*

Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 155 *et seq.,* 161.

Am Jur 2d, Records and Recording Laws §§ 32 *et seq.*

Am Jur 2d, Statutes §§ 142 *et seq.,* 194 *et seq.*

What are "records" of agency which must be made available under state Freedom of Information Act. 27 ALR4th 680.

Validity, construction, and application of statutes making public proceedings open to the public. 38 ALR3d 1070.

vice and went beyond any attorney-client privilege. The meetings should have been open to the public.

2. The trial court correctly found that certain luncheon meetings held by the city council violated the OMA.

3. The trial court correctly held that the city council violated the OMA. However, since the OMA does not abrogate the attorney-client privilege, the case is remanded to the trial court for a determination of which records may be released and which records must remain sealed as privileged communications. The trial court's order that the entire court file be open to public inspection was too broad. Those matters legitimately related to legal matters should not be disclosed.

4. The trial court properly determined that plaintiff was a "person" who may file suit to compel compliance with the OMA and a successful person who may recover actual attorney fees and court costs. The trial court erroneously determined that less than actual attorney fees and costs could be awarded. The OMA provides for actual attorney fees and court costs. Appellate review of the costs of plaintiff's depositions was not preserved.

Affirmed as modified and remanded.

1. ATTORNEY AND CLIENT — PRIVILEGED COMMUNICATIONS.

The purpose of the attorney-client privilege is to allow a client to confide in his attorney secure in the knowledge that the communication will not be disclosed; the privilege attaches to confidential communications made for the purpose of obtaining legal advice on some right or obligation; the privilege may be asserted by either the attorney or the client.

2. STATUTES — OPEN MEETINGS ACT.

The purpose of the Open Meetings Act is to provide openness and accountability in government; the act is to be interpreted to accomplish this goal (MCL 15.261 et seq.; MSA 4.1800[11] et seq.).

3. STATUTES — OPEN MEETINGS ACT — ATTORNEY-CLIENT PRIVILEGE.

A section of the Open Meetings Act permits a public body to meet in a closed session to consider material exempt from discussion or disclosure by state or federal statute, or which is reasonably related thereto; the section has been interpreted to allow closed sessions for consideration of a written legal opinion within the attorney-client privilege; the scope of the discussion in closed session must legitimately relate to legal matters, and not tangential nonlegal matters, within the common law attorney-client privilege (MCL 15.268[h]; MSA 4.1800[18][h]).

4. ATTORNEY AND CLIENT — PRIVILEGED COMMUNICATIONS.

A privileged communication for purposes of the attorney-client privilege is one made to the attorney by the party, or client, as his legal adviser, relative to some legal right or obligation; the scope of the matter protected by the privilege depends on the circumstances of the individual transaction where the attorney's general purpose is to give advice concerning legal rights and obligations but he also gives nonlegal advice.

5. STATUTES — FREEDOM OF INFORMATION ACT — PUBLIC RECORDS — ATTORNEY AND CLIENT — ORAL OPINIONS.

Oral opinions by legal counsel are not included within the Freedom of Information Act's definition of "public records" (MCL 15.232[c]; MSA 4.1801[2][c]).

6. STATUTES — OPEN MEETINGS ACT — MEETINGS.

A meeting is defined in the Open Meetings Act as the convening of a public body at which a quorum is present to deliberate or render a decision on public policy; the act excludes a social or chance gathering or conference not designed to avoid the act, but is intended to apply to a meeting by a public body which is designed to avoid the act (MCL 15.262[b], 15.263[10]; MSA 4.1800[12][b], 4.1800[13][10]).

7. STATUTES — OPEN MEETINGS ACT — ATTORNEY-CLIENT PRIVILEGE.

The Open Meetings Act does not abrogate the attorney-client privilege (MCL 15.261 *et seq.*; MSA 4.1800[11] *et seq.*).

8. STATUTES — JUDICIAL CONSTRUCTION — PERSONS — CORPORATIONS.

The term "person" in a statute is generally construed as including corporations unless such a construction would be inconsistent with the manifest intent of the Legislature (MCL 8.3, 8.3l; MSA 2.212, 2.212[12]).

9. STATUTES — OPEN MEETINGS ACT — ATTORNEY FEES — COSTS.

The Open Meetings Act provides for an award of actual attorney fees and court costs to a person who is successful in bringing a suit to compel compliance with the act (MCL 15.271[1], 15.271[4]; MSA 4.1800[21][1], 4.1800[21][4]).

*Miller, Johnson, Snell & Cummiskey* (by *James S. Brady* and *Kenneth L. Jacobs*), for plaintiff.

*Garlington, Sluiter & Agents* (by *Wm. J. Garlington* and *Jack R. Sluiter*), for defendant.

Amicus Curiae:

*Miller, Canfield, Paddock & Stone* (by *Roderick K. Daane*), for the Michigan Municipal League.

Before: MacKENZIE, P.J., and DOCTOROFF and J. C. KINGSLEY,* JJ.

J. C. KINGSLEY, J. Following a bench trial, the trial court found that defendant, Wyoming City Council, violated the Open Meetings Act (OMA), MCL 15.261 *et seq.*; MSA 4.1800(11) *et seq.*, on four occasions between July 28, 1986, and April 14, 1987. The court issued a permanent injunction, awarded plaintiff attorney fees and costs of $23,831.02 and retained jurisdiction to supervise compliance with its order.

Defendant appeals as of right, claiming that no violations occurred; plaintiff cross-appeals seeking a modification of the award for attorney fees and costs. We affirm the trial court's findings on the OMA violations, but modify the award for attorney fees and costs.

The meetings in question were held during a time when defendant was considering, in conjunction with proposed water system improvements, whether to participate with the City of Grand Rapids in a joint study to determine the feasibility of constructing a joint water pipeline from Lake Michigan. Defendant was also preparing to renegotiate its twenty-year-old contracts with its wholesale water customers. Because of the potential costs involved and the rates to be charged, the issue had been characterized as "politically explosive."

Under the existing contracts, the City of Wyoming supplied water to Ottawa County and other

---

* Circuit judge, sitting on the Court of Appeals by assignment.

municipalities at wholesale water rates. While the City of Wyoming owned the existing pipeline, Ottawa County had a fifteen percent interest in its capacity. Ottawa County was exceeding its ownership capacity in using the system, and discussions were held regarding an increase in its ownership to as much as forty-two percent. All of these water matters were interwoven, at least to the extent that improvements or expansions to the existing water systems would affect water rates.

To assist the City of Wyoming, the city council resolved on May 14, 1986, to designate William Halliday, a former city attorney, as special water counsel. Halliday was hired to assist an engineering firm, CH2M Hill, with a cost-of-service rate study and to renegotiate the city's contracts with its wholesale customers.

On July 23, 1986, Halliday sent to the city council a letter labeled "confidential" and "private" which listed various issues he felt should be discussed before further consideration was given to the proposed water improvements. On July 28, 1986, the city council convened for a special meeting after its regularly scheduled committee-of-the-whole meeting which had been open to the public. The city council then voted to retire into closed session to discuss the agenda contained in Halliday's July 23, 1986, letter. At the end of that closed session, the council scheduled another closed session for August 11, 1986, to discuss further the same matters.

Following the closed session on August 11, 1986, the city council reconvened a public meeting and, with virtually no discussion, unanimously passed two resolutions. The first resolution authorized the mayor and city clerk to contract with CH2M Hill concerning a joint pipeline study. The second resolution authorized the mayor and city clerk to

contract with CH2M Hill to design certain water system improvements. Douglas Guthrie, a reporter for the plaintiff newspaper, attended the public meetings and wanted to know what occurred in closed session. Guthrie was told that the closed sessions were held to discuss a legal opinion and were shielded by the attorney-client privilege.

On August 13, 1986, plaintiff filed a complaint in the Kent Circuit Court, alleging that the city council violated the OMA, seeking injunctive relief, and requesting attorney fees and costs. On September 12, 1986, the trial court issued a preliminary injunction prohibiting meetings in violation of the OMA, requiring certain documents to be turned over to the court for in camera review, and requiring electronic recording of all future executive sessions of the city council.

On February 13, 1987, Halliday issued an eight-page letter to the city council labeled "Privileged and Confidential Communication from Special Legal Counsel." The letter related to the capacity interest of Ottawa County in the Wyoming water pipeline system and the legal requirements for rate charges to the wholesale water customers of the City of Wyoming. Halliday concluded his letter by stating he wished to "expand upon and clarify the foregoing issues" at a meeting of the city council.

The city council met in closed session on February 16, 1987, to discuss the letter. Pursuant to the trial court's order, a transcript of the meeting was made and turned over to the court. The transcript revealed that, in addition to discussing the opinion letter, the city council was polled by Halliday and asked to "nod their heads" if they were willing to sell additional capacity to Ottawa County and if they would authorize him to take a certain posi-

tion regarding the rate-making basis for the new contract.

The next significant set of meetings were luncheon meetings held at a restaurant on April 13 and 14, 1987. According to Halliday, the luncheon meetings were held so he could explain the status of a disagreement he had with the city attorney regarding the city's contract with Ottawa County and get a sense from individual council members as to how he should be proceeding in his negotiations. The same three city staff members met first with the mayor and two council members, and then with two other council members the next day. Described as "mini-meetings" in the proceedings below, neither meeting, alone, had a sufficient number of council members attending to constitute a quorum. The two-day total, however, was sufficient to constitute a quorum.

The trial court found that the closed sessions held on July 28, 1986, August 11, 1986, and February 16, 1987, as well as the two mini-meetings held on August 13 and 14, 1987, violated the OMA. The relief granted included a permanent injunction prohibiting the city council from holding future closed sessions in violation of the OMA, deciding any issue based upon an attorney's legal advice in closed session, conducting informal polls in closed session, and holding mini-meetings for the purpose of avoiding the OMA or the court's order that closed sessions be transcribed. In addition, the court ordered that the entire record, including all trial transcripts, closed session transcripts, deposition transcripts and exhibits, be open to public inspection. On June 30, 1987, the trial court found the total attorney fee submitted by plaintiff's counsel to be reasonable and necessary, but reduced it by fifty percent because "rough justice and equity

requires some relief" to the taxpayers of the City of Wyoming.

The issue which is preliminary to all other issues raised on appeal is whether the trial court construed § 8(h) of the OMA too narrowly in concluding that the OMA only authorized closed sessions to discuss written legal opinions. The city council argues that § 8(h) should be construed as authorizing closed sessions on any matters shielded by the common law attorney-client privilege. We disagree.

The purpose of the attorney-client privilege is to allow a client to confide in his or her attorney secure in the knowledge that the communication will not be disclosed. *Kubiak v Hurr,* 143 Mich App 465; 372 NW2d 341 (1985). This privilege, which attaches to confidential communications made for the purpose of obtaining legal advice on some right or obligation, may be asserted by either the attorney or the client. *Id.,* pp 472-473. This is distinguishable from the OMA, which has as its purpose providing openness and accountability in government and is interpreted to accomplish this goal. *Esperance v Chesterfield Twp,* 89 Mich App 456, 463; 280 NW2d 559 (1979). The OMA provides, in pertinent part:

> Sec. 3 (1) All meetings of a public body shall be open to the public and shall be held in a place available to the general public. All persons shall be permitted to attend any meeting except as otherwise provided in this act.
>
> (2) All decisions of a public body shall be made at a meeting open to the public.
>
> (3) All deliberations of a public body constituting a quorum of its members shall take place at a meeting open to the public except as provided in this section and sections 7 and 8. [MCL 15.263; MSA 4.1800(13).]

Sec. 8. A public body may meet in a closed session only for the following purposes:

\* \* \*

(h) To consider material exempt from discussion or disclosure by state or federal statute. [MCL 15.268; MSA 4.1800(18).]

Because a strict construction is given to closed-session exceptions so as to limit the situations which are not open to the public, *Wexford Co Prosecutor v Pranger,* 83 Mich App 197; 268 NW2d 344 (1978), we must reject the city council's argument that § 8(h) authorizes closed sessions on any matter shielded by the attorney-client privilege. The language of § 8(h) is clear. The only material which can be considered in closed sessions under this provision is that exempt from discussion or disclosure by a state or federal statute. The only statute relied on by the city council as justification for its closed sessions is the Freedom of Information Act, MCL 15.231 *et seq.*; MSA 4.1801(1) *et seq.*, and in particular § 13(1)(h), which exempts from disclosure as a "public record" (defined as a writing, see § 2[c]) information or records subject to the attorney-client privilege.

In *Booth Newspapers, Inc v Regents of the University of Michigan,* 93 Mich App 100; 286 NW2d 55 (1979), this Court considered § 13(1)(h) of the FOIA, as applied to § 8(h) of the OMA, and concluded that a written opinion of counsel is "material" which need not be disclosed under the FOIA and is, therefore, exempt from the open meeting requirements of the OMA. We believe that the most *Booth* stands for, however, is that a meeting of a public body may be closed for consideration of a written legal opinion within the attorney-client privilege.

In light of *Booth,* we conclude that the trial

court did not interpret § 8(h) of the OMA too narrowly. In *Alderman v People,* 4 Mich 414, 422-423 (1857), our Supreme Court described a privileged communication as one which "must have been made to the attorney by the party, or client, as his legal adviser, and for the purpose of obtaining his legal advice and opinion, relative to some legal right or obligation."

Thus, as observed in 8 Wigmore, Evidence (McNaughton rev, 1961), § 2296, p 567, where an attorney's general purpose concerns legal rights and obligations, but the attorney also gives nonlegal advice, then the scope of the matter protected by the privilege will depend upon the circumstances of the individual transaction. In this case, for example, Halliday acknowledged that certain of the discussions held in closed executive session, particularly relating to the hiring of CH2M Hill and the amounts to be paid, should have been held in a public session.

We conclude that the attorney-client privilege which may be asserted regarding the consideration and discussion of a written legal opinion under § 8(h) is no broader or narrower than this common law privilege. We, therefore, hold that § 8(h) of the OMA authorizes closed sessions to discuss matters which are exempt from disclosure or discussion by a statute (such as the FOIA), or which are reasonably related thereto. To effectuate the clear legislative intent in the OMA to promote openness and accountability, the scope of the discussion in closed session must legitimately relate to legal matters, and not bargaining, economics, or other tangential nonlegal matters. Because the trial court correctly considered these limitations, we find no legal error in its interpretation of the OMA as it applies to this case.

We next consider defendant's argument that it

should be allowed to hold closed sessions to receive oral legal opinions. Defendant claims it would be easier for the public to monitor what occurred in closed session if such a session was preceded by the public dissemination of an agenda listing the topics to be discussed, as opposed to monitoring a closed session on a written opinion which, accordingly, would be exempt from disclosure. Although this argument primarily pertains to the July 28 and August 11, 1986, meetings, we note that the agenda discussed at those meetings was not disclosed to the public. Instead, it was labeled as "privileged and confidential."

In any event, the trial court correctly found that § 8(h) of the OMA did not authorize the city council's holding of a closed session to receive the oral opinion given by Halliday on July 28, 1986, and continuing on August 11, 1986. As previously noted, § 8(h) allows closed meetings to "consider material exempt from discussion or disclosure by state or federal statute." The only statute relied upon in this case was the FOIA, which deals with disclosure of "public records." Oral opinions are not included within the definition of "public records."

The scope of discussion allowed under § 8(h) is not defined by the amount of detail contained in the written legal opinion but, instead, by the legal matter raised and addressed in the writing. The public's ability to monitor what occurred in closed session is amply protected by OMA's requirement that a roll call vote be taken in public session and the purpose for calling the closed session be entered in the minutes of the meeting at which the vote is taken, MCL 15.267(1); MSA 4.1800(17)(1), and by the OMA's requirement that minutes of the closed session be taken and disclosed if required by a civil action, MCL 15.267(2); MSA 4.1800(17)(2).

Although the distinction we have made between written and oral legal opinions may seem somewhat technical and the closed sessions authorized by the Legislature under § 8(h) may not be the best means of facilitating attorney-client communications, it is not our task to pass on the wisdom of legislation. *Alexander v Employment Security Comm,* 4 Mich App 378, 383; 144 NW2d 850 (1966), lv den 379 Mich 751 (1967). We must conclude that the closed sessions held on July 28 and August 11, 1986, to receive Halliday's oral legal opinions violated the OMA.

Even if we were to find that the city council could hold a closed session to receive an oral opinion of counsel, we would not reverse the trial court's finding that the July 28 and August 11, 1986, meetings violated the OMA. We will not set aside a trial court's factual findings unless the court clearly erred. MCR 2.613(C).

It is clear that the area of discussion at the closed sessions went beyond receiving and discussing Halliday's legal advice. Halliday's testimony indicated that the July 28, 1986, closed session was adjourned so that he could attend meetings of the wholesale customers and report back to the city council on the customers' positions on the proposed joint pipeline study. Halliday admitted informing the city council at the August 11, 1986, closed session that the wholesale water customers preferred, if they had a choice, that Grand Rapids and the city go jointly on the pipeline, but were more interested in getting the water at the earliest possible time and at the best rate. He also testified that, during the discussion by council members, he commented on the appropriateness of hiring CH2M Hill to review the study of the proposed joint pipeline. Immediately following that closed session, a public meeting was held wherein the

city council unanimously resolved to hire CH2M Hill for this purpose.

From the above, it seems clear that the area of discussion at the closed session went beyond any attorney-client privilege. Once the city council's discussion changed from a consideration of Halliday's legal opinion of what it could or could not do to a consideration of what it should or should not do, the meeting should have been opened to the public. The city council's failure to do so violated the OMA.

We next consider the city council's argument that the trial court erred in finding that its closed session held on February 16, 1987, violated the OMA. Plaintiff concedes that certain of the information in Halliday's letter of February 13, 1987, properly constitutes legal opinions which would be protected by the OMA. It is clear from the transcript of the meeting, however, that the city council went beyond discussing matters related to the legal opinion. The city council discussed matters of public policy and reached a conclusion as to the direction of ongoing negotiations. Most telling of the city council's failure to limit its discussion to Halliday's legal opinion was the informal "nodding of the head" poll taken at the session. Therefore, we find no error in the trial court's finding that the OMA was violated.

We next consider the city council's argument that the trial court erred in finding that the luncheon meetings held on April 13 and 14, 1987, violated the OMA. The city council contests the trial court's findings that the meetings came within the OMA's meeting requirements because the total number of attendees constituted a "constructive quorum," and that the purpose of the meetings was to evade the OMA. Based on our review of the record, we find no error.

The OMA defines a meeting as the convening of a public body at which a quorum is present to deliberate or render a decision on public policy. MCL 15.262(b); MSA 4.1800(12)(b). Because neither luncheon meeting, alone, had a quorum, defendant argues that the meetings should be exempt from the OMA. Our primary objective in construing a statute is to ascertain and give effect to legislative intent. *Spartan Asphalt Paving Co v Grand Ledge Mobile Home Park,* 400 Mich 184; 253 NW2d 646 (1977). Advisory committees of less than a quorum which do not collectively deliberate toward resolution of public business are not within the purview of the act. See OAG, 1977-1978, No 5183 (Pt II, No 25), p 40 (March 8, 1977). However, § 3(10) of the OMA, which excludes meetings of a social or chance gathering or a conference "not designed to avoid this act" from the OMA, evidences a legislative intent that the OMA apply to those meetings designed to avoid the act. To accept the city council's suggestion that a public body can avoid the OMA by deliberately dividing itself into groups of less than a quorum and still deliberate on public policy would circumvent the legislative principles as well as the overall objective of the OMA to promote openness and accountability in government.

In this case, although Halliday testified that he conveyed information at the luncheon meetings on a legal disagreement which he had with the city attorney, it is also clear that he sought a "nonbinding sense of direction" from the individual council members on his negotiating stance. From the record as a whole, we find no error in the trial court's finding that the meetings were designed to avoid the OMA. Compare OAG, 1979-1980, No 5788, p 1015 (September 23, 1980). The portion of the meetings concerning the legal disagreement should have been held in closed session of the entire city

council and subject to the court's transcription requirement. Because the portion of the meetings concerning Halliday's negotiating stance related to public policy, rather than legal advice, and the city council has not cited any provision in § 8 of the OMA which allows a closed session for this purpose, we find no error in the trial court's finding that the April 13 and 14, 1987, luncheon meetings violated the OMA.

In conclusion, the trial court correctly found that the city council violated the OMA. Because the OMA does not abrogate the attorney-client privilege, however, we must remand to the trial court for a determination of which records may be released and which records must remain sealed as privileged communications. The trial court's order that the entire court file be open to public inspection was too broad. Those matters legitimately related to legal matters should not be disclosed.

Next, we consider plaintiff's claim, as cross-appellant, that the trial court erred in only awarding it one-half of its actual attorney fees and costs and the city council's counter argument, as appellant, that plaintiff should not have been awarded any attorney fees or costs because it was not a "person" as used in § 11(4) of the OMA. The statutory provision provides:

> (4) If a public body is not complying with this act, and a person commences a civil action against the public body for injunctive relief to compel compliance or to enjoin further noncompliance with the act and succeeds in obtaining relief in the action, the person shall recover court costs and actual attorney fees for the action. [MCL 15.271(4); MSA 4.1800(21)(4).]

In awarding attorney fees and costs to plaintiff under this provision, the trial court found that

plaintiff was a person and that the amount requested was reasonable and necessary, but exercised its discretion to award plaintiff one-half of the amount requested.

We agree with the trial court that plaintiff is a person. Under the OMA, it is a person who may file suit to compel compliance with the act, MCL 15.271(1); MSA 4.1800(21)(1), and a successful person who may recover actual attorney fees and court costs, MCL 15.271(4); MSA 4.1800(21)(4). As a general rule, the term person in a statute is defined as including corporations unless such a construction would be inconsistent with the manifest intent of the Legislature. See MCL 8.3; MSA 2.212 and MCL 8.3l; MSA 2.212(12). However, we disagree with the trial court's determination that less than actual attorney fees and costs can be awarded. The OMA provides for "actual" attorney fees and court costs. We can appreciate the trial court's reluctance to add to the taxpayers' burden, but there is no room for discretion.

Finally, we consider the city council's argument, raised for the first time on appeal, that plaintiff is not entitled to costs of $1,240 for depositions because those depositions were not "read in evidence" as provided for in MCL 600.2549; MSA 27A.2549. In the proceedings below, and assuming that plaintiff was a person, the city council raised only a general objection to the amount of attorney fees as being unreasonable and not fully necessary. Because no specific objection was raised to the deposition costs, appellate review has not been preserved. See *Harvey v Security Services, Inc,* 148 Mich App 260, 265; 384 NW2d 414 (1986), lv den 425 Mich 863 (1986).

In conclusion, we affirm the trial court's determination that the city council violated the OMA. We remand for a determination of which materials

should be released and which should be sealed as privileged. We modify the award for attorney fees and costs to include the actual amount requested by plaintiff of $47,662.05. Jurisdiction is not retained.

Affirmed as modified and remanded.