Pastor Mary GAULT, et al., Plaintiffs,

v.

CITY OF BATTLE CREEK, et al., Defendants.

No. 4:99–CV–62.

United States District Court, W.D. Michigan, Southern Division.

July 12, 1999.

Michael J. Steinberg, ACLU Fund of Michigan, Detroit, MI, Jonathon D. Rowe, Soble & Rowe, L.L.P., Ann Arbor, MI, James N. Rodbard, James N. Rodbard, P.C., Kalamazoo, MI, for Mary Gault and Robert C. Mitchell, III, plaintiffs.

Clyde J. Robinson, City of Battle Creek, Interim City Attorney, Battle Creek, MI, for City of Battle Creek and Ted Dearing, defendants.

## OPINION

QUIST, District Judge.

Plaintiffs, Pastor Mary Gault ("Gault") and Robert C. Mitchell, III ("Mitchell"), have sued Defendants City of Battle Creek ("Battle Creek") and Ted Dearing, mayor of the City of Battle Creek ("Dearing"), for violation of their First and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 and for violation of the Michigan Open Meetings Act ("OMA"), 15 M.C.L. §§ 15.261 to .275. This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction

### Facts

Gault and Mitchell are members of a community organization called FAME, which is dedicated to stopping police misconduct in Battle Creek. (See Compl. ¶ 4.) On April 6, 1999, Plaintiffs appeared at the bi-weekly meeting of the Battle Creek City Commission ("Commission"), which Dearing chairs. The Commission provides a period for "public comments" at the beginning of each meeting, prior to the time that meeting's agenda is addressed. (See 4/6/99 Order of Business at 1, Pls.' Br.Ex. 1; see also Battle Creek City Commission Rule X, Defs.' Resp.Ex. 3.) Public comments are limited to five minutes per individual. (See 4/6/99 Order of Business at 1.) Citizens must raise their hand and wait to be recognized before speaking. (See id. at 3.) Citizens are also directed to be "brief and concise in making their remarks" and may be ruled out of order by the Commission if the citizen "becomes repetitive or, in the opinion of the Chair, takes an inordinate amount of time in making comments...." (Id.; see also Battle Creek City Commission Rule XVII(4), Defs.' Resp.Ex. 3.) Neither the 4/6/99 Order of Business nor the Commission rules provide any other restrictions on public comment.

The parties offer different interpretations of what occurred during the public comment portion of the April 6, 1999, meeting. Plaintiffs allege that they attempted to raise their concern about the continued employment of Battle Creek Chief of Police Jeffrey Kruithoff ("Kruithoff"). Specifically, Plaintiffs allege that they tried to assert that Kruithoff was unfit to serve as police chief because of his

participation in the cloning of the pager of Adams, a Battle Creek police officer, for inappropriate personal reasons, which was the subject of a federal court action before Judge McKeague, *Adams v. City of Battle Creek*, 1999 WL 425885, No. 1:98–CV–233.[1] (*See* Compl. ¶¶ 10–12.) Plaintiffs also attempted to state that the cloning of Adams' pager was motivated by personal animosity between Kruithoff and Adams arising out of an affair Kruithoff had with Adams' wife, Melinda. Plaintiffs state that before they could express their view about Kruithoff, they were ordered by Dearing "to stop their comments on threat of having to yield to the next speaker, and in one instance, being ruled out of order and subject to arrest." (Compl.¶ 13.) Plaintiffs complied with Dearing's statement.

Defendants offer a different interpretation of these events. Defendants state that "Plaintiffs had been permitted to speak ... regarding the fitness of the Police Chief to continue to hold his office; however, they were ruled out of order when they attempted to make comments concerning the personal life of the Chief ." (Defs.' Resp. ¶ 2.) Defendants allege that "Plaintiffs made no attempt to discuss issues that were in current litigation between a Police Detective, David Adams, and the City of Battle Creek and its Police Chief, Jeffrey Kruithoff." (*Id.* ¶ 3.) Defendants claim that the pager cloning occurred to determine whether Adams was tipping off suspected drug dealers.

At the beginning of the next meeting on April 20, 1999, the Commission, in response to a request by Kruithoff, voted to go into closed session to hear Plaintiffs' "complaints and charges" against him, in accordance with the Commission's interpretation of the OMA. (*See* Defs.' Resp. ¶ 5.) Plaintiffs were afforded the opportunity to speak against Kruithoff in the closed session but did not do so. (*See id.*)

During public comment time, after the closed session, Plaintiffs again attempted to address the Commission concerning Kruithoff. Plaintiffs allege that "they were again threatened with being ruled out of order (and subject to arrest), and were otherwise prohibited from addressing the City Commission and the public. In fact, Plaintiff Gault was removed from the Commission chambers by police officers at the direction of Defendant Dearing." (Compl.¶ 15.) Defendants respond that Gault was provided the opportunity to speak concerning the general fitness of Kruithoff to be police chief, but "was ruled out of order only when she attempted to make a charge or complaint that Chief Kruithoff authorized the illegal cloning of a pager. She was removed from the City Commission chambers only after she continued to disrupt the meeting." (Defs.' Resp. ¶ 4.)

### Standard

 The Court must consider the following four factors in deciding whether to grant a motion for preliminary injunction:

(1) whether the movant has a "strong" likelihood of success on the merits;

(2) whether the movant would otherwise suffer irreparable injury;

(3) whether issuance of a preliminary injunction would cause substantial harm to others; and

(4) whether the public interest would be served by issuance of a preliminary injunction.

*See, e.g., McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir.1997) (en banc) (quoting *Sandison v. Michigan High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1029 (6th Cir.1995)). "[T]he four considerations applicable to preliminary injunctions are factors to be balanced and not prerequisites that must be satis-

---

1. On April 28, 1999, shortly after the events in this case, Judge McKeague held that no violation of the United States Wiretap Act had occurred in the cloning of Detective Adams' pager. Judge McKeague dismissed the federal claim and declined to exercise pendent jurisdiction over the state claims. Adams has appealed this decision to the Sixth Circuit. *See Adams v. City of Battle Creek*, 1999 WL 425885, No. 1:98–CV–233 (W.D.Mich. Apr. 28, 1999).

fied. These factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements." *American Imaging Servs., Inc. v. Eagle–Picher Indus., Inc. (In re Eagle–Picher Indus., Inc.)*, 963 F.2d 855, 859 (6th Cir. 1992) (citation omitted).

## Analysis

### A. Likelihood of Success

Plaintiffs contend that their First Amendment right to free speech, applicable to the State of Michigan and its political subdivisions by operation of the Fourteenth Amendment, is being unlawfully restrained by Defendants. The parties agree that the Battle Creek City Commission meetings are a "limited public forum," defined as "public property which the state has opened for use by the public as a place for expressive activity." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983); *see also White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir.1990) (holding a city council meeting to be a limited public forum); M.C.L. §§ 15.262, 15.263(5) (including a city commission under the definition of a "public body" under the OMA and stating that "[a] person shall be permitted to address a meeting of a public body under rules established and recorded by the public body"). As a limited public forum, "[r]easonable time, place and manner regulations are permissible, and a content-based prohibition must be narrowly drawn to effectuate a compelling state interest." *Perry* at 46, 103 S.Ct. at 955. In other words, "where the government has intentionally created a public forum ... by allowing certain members of the public to address it as to certain matters, it is a violation of the first amendment to selectively prohibit others from similarly addressing it as to the same matters based upon the content of their speech or their status in the community." *Pesek v. City of Brunswick*, 794 F.Supp. 768, 783 (N.D.Ohio 1992).

Defendants argue that they have a compelling interest in the orderly conduct of Commission meetings, such that Defendants' actions in ruling the Plaintiffs out of order were appropriate. While "[c]itizens have an enormous first amendment interest in directing speech about public issues to those who govern their city," a city commission meeting is still "a governmental process with a governmental purpose" that "has an agenda to be addressed and dealt with." *White*, 900 F.2d at 1425. Therefore, "[p]ublic forum or not, the usual first amendment antipathy to content-oriented control of speech cannot be imported into the Council chambers intact." *Id.*

█ It is well established that a citizen addressing a city governmental body in a limited public forum may be stopped from speaking if the speech is "irrelevant or repetitious" or "disrupts, disturbs or otherwise impedes the orderly conduct of the Council meeting," so long as the speaker is not "stopped from speaking because the moderator disagrees with the viewpoint he is expressing...." *Id.* at 1425–26. As the Ninth Circuit explained in a more recent case, "limitations on speech at [city government] meetings must be reasonable and viewpoint neutral, but that is all they need to be." *Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 271 (9th Cir.1995).

Plaintiffs argue that they were not being unduly disruptive or repetitive, nor were they attempting to discuss irrelevant personal matters. Plaintiffs emphasize that although "[r]easonable time, place and manner regulations are permissible, [ ] a content-based prohibition must be narrowly drawn to effectuate a compelling state interest." *Perry*, 460 U.S. at 46, 103 S.Ct. at 955. Plaintiffs cite to an advisory opinion by the Michigan Attorney General specifically addressing whether a city body could adopt a prohibition on "personal attacks" during the public comment portion of a meeting. The Michigan Attorney General concluded that if the body adopted a definition of "personal attacks" that included

the manner in which an employee of the board or a board member carries out his or her duties, the rule would be invalid; on the other hand, if the phrase ["personal attack"] refers to conduct of the person being attacked that is totally unrelated to the manner in which he or she performs his or her duties, the exclusionary rule may be applied.

1977–1978 Mich. OAG No. 5332, 1978 WL 30762 (July 13, 1978). Plaintiffs argue that the statements they wished to make were not "totally unrelated" to the police chief's public duties.[2] Plaintiffs also note that the Battle Creek City Commission's rules do not include a prohibition on "personal attacks," which was the reason originally given by Defendants for ruling Plaintiffs out of order.

### 1. April 6, 1999, Meeting

The videotape of the April 6, 1999, meeting shows that Plaintiffs, although allowed to speak at length about problems with the police department, were ruled out of order when they attempted to raise the allegation that Kruithoff had an affair with Adams' wife. (*See* Videotape excerpts from Battle Creek City Commission Meetings, Pls.' Br.Ex. 2.) Defendants argue that Plaintiffs were properly ruled out of order because the affair between Kruithoff and Melinda Adams is a purely personal matter which is totally unrelated to Kruithoff's performance of his duties as police chief.

█ While the Court notes that Plaintiffs' motive in commenting on this affair could be an insensitive, mean spirited, personal attack designed to embarrass Kruithoff and that public discussion of the affair can only add to the embarrassment of private citizens, Melinda Adams, and other members of Adams' and Kruithoff's families, if there are any, the Court concludes that the police chief's affair with another officer's wife is not solely a matter of private concern. The Court noted several incidents from the past and the present demonstrating the relevance to the public

of affairs involving public officials. Sexual affairs have caused government ministers to lose power, corporate presidents to resign, spouses to commit murder, not to mention dissension and disruption in offices and organizations. This type of behavior is of even greater public concern when it involves a paramilitary organization such as a police department. The allegation against Kruithoff could directly relate to the morale, leadership, and teamwork of the Battle Creek Police Department and its officers.

Defendants' argument that the affair took place in 1989 and 1990, almost ten years ago, at a time when Kruithoff was a sergeant working alongside Adams, does not change this Court's conclusion. As defense counsel indicated at oral argument, Adams did not learn of the affair until August 1998, less than one year ago, and was "devastated" upon learning of the affair. Therefore, despite the fact that the affair took place ten years ago, the emotional turmoil caused by the disclosure of the affair is quite recent. Furthermore, any animosity between Kruithoff and Adams caused by the recent disclosure of the affair would be exacerbated by the fact that Adams is the head of the union for the Battle Creek police department.

Accordingly, the Court concludes that the affair between Kruithoff and Melinda Adams is a matter of public concern, and that the restriction by the Commission of Plaintiffs' attempt to raise this issue at public comment on April 6, 1999, violated the First Amendment.

█ The Court similarly concludes that the allegation that Kruithoff illegally cloned Adams' pager is a matter of public concern, and is therefore protected by the First Amendment in the "limited public forum" of public comment during Commission meetings. Even though Judge McKeague granted summary judgment in favor of Kruithoff on Adams' wiretapping

---

2. Defendants also rely on this Michigan Attorney General opinion, but argue that the comments by Plaintiffs were purely personal attacks "totally unrelated" to Kruithoff's performance of his duties as police chief. (*See* Defs.' Resp. at 11.)

claim, the Plaintiffs still have the right to assert their belief that Kruithoff's alleged actions concerning the cloning of Adams' pager were illegal and an improper abuse of his power. There is no question that the alleged actions concerning the cloning of Adams' pager involve Kruithoff's performance of official duties rather than purely personal matters.

### 2. April 20, 1999, Meeting

Defendants initially argue that the comments offered by Plaintiffs during the April 20, 1999, meeting were also "personal attacks" concerning private matters. However, for reasons given previously, the Court concludes that these comments involved matters of public concern.

In addition to the argument that Plaintiffs' comments on April 20, 1999, were personal attacks not protected by the First Amendment, Defendants also argue that Plaintiffs were properly ruled out of order at the April 20, 1999, meeting, because Plaintiffs had the opportunity to raise their concerns about Kruithoff's conduct before a closed session of the Commission in accordance with the OMA. Defendants cite M.C.L. § 15.268 as support for their decision at the beginning of the April 20, 1999, meeting, upon a request by Kruithoff, to hear any complaints against Kruithoff in a closed session. The statute provides, in relevant part:

> A public body may meet in a closed session only for the following purposes: (a) To consider the dismissal, suspension, or disciplining of, or to hear complaints or charges brought against, or to consider a periodic personnel evaluation of, a public officer, employee, staff member, or individual agent, if the named person requests a closed hearing.

M.C.L. § 15.268(a).

The parties agree that the question under Plaintiffs' OMA claim is whether the comments Plaintiffs wished to offer at the April 20, 1999, meeting constitute "complaints or charges brought against ... a public officer." However, the parties disagree about the meaning of the phrase "complaints or charges" which, unfortunately, is not defined in the statute.

Plaintiffs argue that the exception described in M.C.L. § 15.268(a) must be read to apply only to formal complaints against a public official. Plaintiffs present three arguments in favor of their position. Plaintiffs first argue that a broad reading of the phrase "complaints or charges," such that any negative comment by a citizen would be considered a "complaint," would turn the "complaint" exemption into a gaping loophole that would allow a public body to require any negative public comments involving any public official to be voiced only in closed session. (*See* Pls.' Br. at 16–19.) Plaintiffs argue that this interpretation would be unconstitutional, as it would allow the public body to decide whether to hear the comment in public or private session based solely on whether the body disagrees with the content of the speech.

Plaintiffs also contend that a narrow reading of the statute is required because the OMA was adopted to promote "open government" and that in order "[t]o further the OMA's legislative purposes, the Court of Appeals has historically interpreted the [OMA] broadly, while strictly construing its exemptions and imposing on public bodies the burden of proving that an exemption exists." *Booth Newspapers, Inc. v. University of Mich. Bd. of Regents,* 444 Mich. 211, 223, 507 N.W.2d 422, 427–28 (1993); *see also Booth Newspapers, Inc. v. Wyoming City Council,* 168 Mich.App. 459, 467, 425 N.W.2d 695, 698 (1988) (holding that OMA exceptions must be interpreted strictly to meet the legislative goal of openness and accountability in government); *Ridenour v. Board of Educ. of the City of Dearborn Sch. Dist.,* 111 Mich.App. 798, 802, 314 N.W.2d 760, 763 (1981) (noting that "the Open Meetings Act must be strictly construed against exemptions to public meetings").

Finally, Plaintiffs argue that the mechanics of how the OMA operates also requires the phrase "complaints or

charges" to be interpreted to mean formal complaints or charges brought by the public body. A meeting at which a "complaint or charge" is brought cannot be closed unless the official against whom the "complaint or charge" is made asks the body to close the meeting. *See* M.C.L. § 15.268(a). Therefore, the official must be aware of the "complaint or charge" in order to make a request to the body to close the meeting. As Plaintiffs note, unless every public official attends every moment of each public body meeting, the official will not be present to request a closed meeting each time a citizen makes a negative comment about the official during the public comment portion of the meeting. In fact, Kruithoff was not at the April 6, 1999, meeting, which is why the OMA could not be invoked to require Plaintiffs' comments on April 6 to be heard in closed session. Therefore, Plaintiffs argue, the only logical interpretation of the "complaints or charges" phrase is that only formal complaints, which the official would have advance notice of and, therefore, the opportunity to request the body to close the meeting, fall under the OMA.

Defendants argue that the phrase "complaint or charge" must be interpreted in light of its everyday meaning and that the comments offered by Plaintiffs in this case, that Kruithoff was improperly performing his duties as police chief and should be fired, constitute a "complaint or charge" under the plain meaning of this phrase. Defendants rely almost exclusively on the Michigan Court of Appeals' decision in *Ridenour* to support their position. The court in *Ridenour*, in dicta, considered what constitutes "complaints or charges brought against ... a public official." The court began by noting that "[t]he Legislature did not define the phrase *complaints or charges* in § 8(a) of the act." *Ridenour*, 111 Mich.App. at 803, 314 N.W.2d at 763. The court also recognized the rule that "the Open Meetings Act must be strictly construed against exemptions to public meetings." *Id.* at 802, 314 N.W.2d at 763. However, the court then noted in dicta that, despite the rule that the OMA

be strictly construed against exemptions to public meetings, the terms "complaints" and "charges" "should be interpreted broadly and in accordance with their everyday meanings." *Id.* at 803, 314 N.W.2d at 763. The court looked to the dictionary definition of these words, defining "complaint" as either "'something that is a cause or subject of protest or outcry'" or as "'a formal allegation against a party.'" *Id.* (quoting *Webster's New Collegiate Dictionary* 228 (2d ed.1979)). The court defined "charge" as "to make an assertion against (especially) by ascribing guilt for an offense; to assert as an accusation." *Id.* at 803–04, 314 N.W.2d at 763 (quoting *Webster's New Collegiate Dictionary* 185 (2d ed.1979)).

The Court questions whether the Michigan Supreme Court would follow the interpretation of the phrase "complaints or charges" provided in dicta in *Ridenour*, given the compelling arguments presented by Plaintiffs for a narrower interpretation. However, the Court need not resolve this question of interpretation of Michigan law because, even if Defendants properly closed the meeting on April 20, 1999, Plaintiffs still had the right to address the Commission on any matter of public concern.

The Michigan Attorney General, in an advisory opinion, concluded that a public body "may not ... prohibit a person from addressing it on grounds the matter to be addressed is or might be the subject of a closed meeting." 1977–1978 Mich. OAG No. 5218, 1977 WL 32714 (Sept. 13, 1977). While the Court is not bound by this advisory opinion, the Court notes that both parties cited with approval a subsequent advisory opinion by the Michigan Attorney General that also involved interpretation of the OMA. *See* 1977–1978 Mich. OAG No. 5332, 1978 WL 30762 (July 13, 1978) (involving whether a public body could restrict personal attacks on an official). The Court also notes that Defendants did not disagree with the conclusion of this advisory opinion in their response brief or at oral

argument, despite the fact that Plaintiffs discussed this opinion in their supporting brief and at oral argument.

■ Also, in conducting its own analysis of the issue, the Court agrees with the conclusion of the Michigan Attorney General. By definition, a public body is not required to let members of the public speak at closed meetings. Therefore, the First Amendment rights of citizens would be unduly restricted based on content if a public body was allowed to rule out of order any speech concerning a subject that was being considered or that might be considered in a closed meeting. Therefore, the Court concludes that Plaintiffs' rights under the First Amendment and the OMA were improperly restricted when they were ruled out of order for attempting to speak on an issue that was the subject of a closed meeting.

Accordingly, the Court concludes that Plaintiffs have demonstrated a substantial likelihood of success on their First Amendment and OMA claims for purposes of satisfying the first factor for issuance of a preliminary injunction.

## B. Existence of Irreparable Injury

The parties agree that if Plaintiffs' First Amendment rights are being violated, this violation constitutes irreparable harm *per se. See, e.g., Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976). Because the Court has concluded that Plaintiffs have a strong likelihood of success on their First Amendment claim, this factor weighs in favor of granting Plaintiffs' motion for preliminary injunction.

## C. Harm to Others

Defendants argue that allowing Plaintiffs to openly comment on details of Kruithoff's personal life both invades Kruithoff's privacy and potentially undermines Kruithoff's ability to administer his office. However, Defendants acknowledge that this risk of harm to Kruithoff outweighs Plaintiffs' right to free speech only if the public comment involves personal matters

totally unrelated to Kruithoff's position as police chief. As the Court has previously concluded, the public comment Plaintiffs wish to make does not involve a purely personal matter.

There is also the potential of harm to Officer Adams, Melinda Adams, innocent members of the Adams family and Kruithoff family, if there are any. In this regard, however, the matter of the affair is already public, and this Opinion will also be a matter of public record. In this Court's judgment, the feelings generated by the disclosure of the affair should dissipate over time. In any event, the risk of harm to others, while a concern to the Court, is not a sufficient factor to require Plaintiffs' motion for preliminary injunction to be denied.

## D. Public Interest

Because Plaintiffs are likely to succeed on their claim under the First Amendment, the public has a substantial interest in Plaintiffs' request for injunctive relief. "Citizens have an enormous first amendment interest in directing speech about public issues to those who govern their city." *White,* 900 F.2d at 1425; *see also Leventhal v. Vista Unified Sch. Dist.,* 973 F.Supp. 951, 958 (S.D.Cal.1997) (noting that "[d]ebate over public issues, including the qualifications and performance of public officials ... lies at the heart of the First Amendment"). Accordingly, this factor also weighs in favor of injunctive relief.

### Conclusion

For the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction will be granted.

An Order consistent with this Opinion will be entered.

## ORDER AND PRELIMINARY INJUNCTION

For the reasons set forth in the Opinion entered on this date,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Preliminary Injunction (docket no. 3) is **GRANTED**.

Defendants are hereby enjoined from preventing Plaintiffs or other citizens speaking during the public comment portion of Battle Creek City Commission meetings from speaking their views on alleged events concerning Police Chief Kruithoff's performance of his official duties, specifically, Kruithoff's alleged actions involving the cloning of Officer Adams' pager and the affair between Kruithoff and Melinda Adams.

Pursuant to Fed.R.Civ.P. 65(c), Plaintiffs shall post a bond of Five Hundred Dollars ($500) for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined.

This injunction shall be effective upon posting of the bond.