FILED
**United States Court of Appeals**
**Tenth Circuit**

**December 27, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

HARRY POLLAK,

      Plaintiff - Appellant,

v.

SUSAN WILSON, individually and her official capacity as Sheridan County School District No 2 Board of Trustees Chair; ARIN WADDELL, individually and their official capacity as Sheridan County School District No 2 Board of Trustees Vice-Chair; WAYNE SCHATZ, individually and his official capacity as Sheridan County School District No 2 Board of Trustees Trustee Schatz; SHANE RADER, individually and his official capacity as Sheridan County School District No 2 Board of Trustees Treasurer; ANN PERKINS, individually and her official capacity as Sheridan County School District No 2 Board of Trustees Trustee Perkins; ED FESSLER, individually and his official capacity as Sheridan County School District No 2 Board of Trustees Trustee Fesler; MARY BETH EVERS, individually and her official capacity as Sheridan County School District No 2 Board of Trustees Trustee Evers; DANA WYATT, individually and their official capacity as Sheridan County School District No 2 Board of Trustees Trustee Wyatt,

      Defendants - Appellees.

No. 22-8017
(D.C. No. 2:22-CV-00049-ABJ)
(D. Wyo.)

_____

## ORDER AND JUDGMENT[*]

_____

Before **TYMKOVICH**, **KELLY**, and **MATHESON**, Circuit Judges.

_____

Harry Pollak was told to stop speaking at a school board meeting.  He filed an action under 42 U.S.C. § 1983 alleging a violation of his free speech rights under the First Amendment.  He then sought a preliminary injunction to enjoin the school board (the "Board") from enforcing the policy it cited to stop his speech.  The district court denied that request, concluding he had not shown a likelihood of success on the merits of his First Amendment claim.  In this interlocutory appeal, Mr. Pollak asserts that the district court abused its discretion in denying his request for a preliminary injunction.  Exercising jurisdiction under 28 U.S.C. § 1292(a)(1), we affirm.

## I.  BACKGROUND

### A. *Legal Background*

1. **First Amendment**

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech."  U.S. Const. amend. I.[1]  But "[n]othing in the Constitution

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] "[T]he Fourteenth Amendment makes the First Amendment's Free Speech Clause applicable against the States" and their political subdivisions.  *Manhattan Cmty. Access Corp. v. Halleck*, --- U.S. ---, 139 S. Ct. 1921, 1928 (2019); *see Brewer v. City of Albuquerque*, 18 F.4th 1205, 1217 (10th Cir. 2021) (quotations omitted).  The First

requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." *Minn. Voters All. v. Mansky*, --- U.S. ---, 138 S. Ct. 1876, 1885 (2018) (quotations omitted). "To determine when and to what extent the Government may properly limit expressive activity on its property, the Supreme Court has adopted a range of constitutional protections that varies depending on the nature of the government property, or forum." *Verlo v. Martinez*, 820 F.3d 1113, 1129 (10th Cir. 2016). The Supreme Court has "sorted government property into [the following] categories": traditional public forums, designated public forums, limited public forums, and nonpublic forums. *Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 679 n.11 (2010); *see also Verlo*, 820 F.3d at 1129, 1129 n.6.

Traditional public forums include public streets and parks "that by long tradition have been open to public assembly and debate." *Verlo*, 820 F.3d at 1129. In traditional public forums, "any restriction based on the content of speech must satisfy strict scrutiny, that is, the restriction must be narrowly tailored to serve a compelling government interest." *Martinez*, 561 U.S. at 679 n.11 (quotations and alterations omitted). Content-neutral restrictions "must be narrowly tailored to advance a significant government interest." *Verlo*, 820 F.3d at 1131.

---

Amendment also applies "to less formal governmental acts," including policies like the one at issue here. *Brewer*, 18 F.4th at 1217 (quotations omitted); *see also Virginia v. Hicks*, 539 U.S. 113, 118 (2003).

The government may create a designated public forum by opening "government property that has not traditionally been regarded as a public forum" for use as a public forum. *Martinez*, 561 U.S. at 679 n.11 (quotations omitted). "[S]peech restrictions in such a forum are subject to the same strict scrutiny as restrictions in a traditional public forum." *Id.*

The government also may create a forum "that is limited to use by certain groups or dedicated solely to the discussion of certain subjects," known as a limited public forum. *Pleasant Grove v. City of Summum*, 555 U.S. 460, 470 (2009). In a limited public forum, the government may impose restrictions so long as they are "reasonable in light of the purpose served by the forum" and viewpoint neutral. *Martinez*, 561 U.S. at 679 n.11, 685; *see Shero v. City of Grove*, 510 F.3d 1196, 1202 (10th Cir. 2007). A restriction is viewpoint-based if it "denies access to a speaker solely to suppress the point of view he espouses on an otherwise includible subject." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985). This standard, which is less demanding on the government than the traditional public forum standard, also applies to a nonpublic forum. *See Verlo*, 820 F.3d at 1129.

## 2. Preliminary Injunction

"[A] preliminary injunction is an extraordinary remedy never awarded as of right." *See Benisek v. Lamone*, --- U.S. ----, 138 S. Ct. 1942, 1943 (2018) (quotations omitted). "[I]t is the exception rather than the rule." *Harmon v. City of Norman*, 981 F.3d 1141, 1146 (10th Cir. 2020) (quotations omitted). To obtain a preliminary injunction, plaintiffs must show "(1) they are substantially likely to succeed on the merits of their claims,

(2) they will suffer irreparable harm if the injunction is denied, (3) their threatened injury without the injunction outweighs any harm to the party opposing the injunction, and (4) the injunction, if issued, is not adverse to the public interest." *Id.* "In the First Amendment context, the likelihood of success on the merits will often be the determinative factor because of the seminal importance of the interests at stake." *Verlo*, 820 F.3d at 1126 (quotations omitted).

Although Mr. Pollak must show he is likely to succeed on the merits, "the burdens at the preliminary injunction stage track the burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006). The Board therefore has the burden of establishing the Policy's constitutionality. *See id.* And if the Board fails to make a sufficient showing that the Policy is constitutional, Mr. Pollak will succeed in establishing a substantial likelihood of success on the merits. *See id.*; *Awad v. Ziriax*, 670 F.3d 1111, 1129 (10th Cir. 2012).

B. *The School Board Policy*

The school board for Sheridan County School District No. 2 (the "District") holds meetings that are open to the public. Mr. Pollak challenges school board Policy BEDH (the "Policy"), which governs participation at board meetings. The Policy provides:

> Personnel matters are not appropriate topics to be discussed at regular board meetings. Decorum requires that such matters will be entertained in executive session as arranged by the Board. Speakers will not be permitted to participate in gossip, make defamatory remarks, use abusive or vulgar language.
>
> . . . .

5

The board chairperson will maintain the prerogative to discontinue any presentation which violates any of the public participation guidelines.

App. at 26.

## C. *Complaint*

Mr. Pollak sued the trustees of the Sheridan County School District under 42 U.S.C. § 1983, claiming they infringed his First Amendment free speech rights. The complaint alleged as follows:

On February 7, 2022, the Board held a meeting, which included a period for public comment. During the comment period, the Board prohibited discussion of "whether the district [was] following the state constitution, personnel matters, criticism, and ridicule." App. at 9 ¶ 9. The Board Chair, Susan Wilson, announced that "[w]e do not talk about personnel unless it's favorable things. We always like to hear those. That's a personnel matter, which we are not allowed to speak about in public." *Id.* ¶ 10.

Mr. Pollak signed up to speak at the meeting. When it was his turn, he "mentioned Superintendent [Scott] Stults' name with respect to Stults' comments at the previous meeting." *Id.* ¶ 13. The Chair "seized on the mention of Stults' name as making a comment on a personnel matter[,] proceeded to shut down [Mr. Pollak]'s comment," and had Mr. Pollak removed from the premises. *Id.* ¶¶ 14-16.

The complaint asserted that the meeting was a limited public forum and that the Board restricted speech based on subject and viewpoint. The complaint also alleged that in restricting Mr. Pollak's speech, the Board "acted in accordance with existing policies . . . [or] made new policy as applied to" him. *Id.* at 10 ¶ 23.

6

Mr. Pollak sought an injunction to prevent the Board from restricting his free speech rights and a declaration that the Board's actions were unlawful. He also sought damages and fees.

### D. *Motion for Preliminary Injunction*

A few weeks after filing the complaint, Mr. Pollak moved for a preliminary injunction. Below we discuss (1) the additional facts the parties provided and (2) their legal arguments in support of relief.

### 1. **Additional Facts**

Mr. Pollak provided a declaration in support of his motion. It said the following:

**When Mr. Pollak signed up to speak at the Board meeting, the sign-up sheet said: "Due to ongoing litigation we will not hear audience comments on [COVID 19] mask mandates, vaccinations, or comments regarding whether or not the district is following the constitution."** *Id.* **at 31 ¶ 5;** *see also id.* **at 39. Mr. Pollak said he "was not intending" to speak about those topics.** *Id.* **at 31 ¶ 6. During the public comment period, the Chair repeated that speakers were prohibited from addressing topics listed on the sheet. She also said speakers could not discuss personnel matters "unless it's favorable things."** *Id.* **at 31 ¶ 9.**

When it was his turn, Mr. Pollak introduced himself and began speaking. The Chair interrupted Mr. Pollak approximately 23 seconds into his remarks, saying he "was speaking on a personnel matter," which was prohibited. *Id.* at 32 ¶¶ 13-14. Mr. Pollak alleged the following exchange then occurred:[2]

> **Mr. Pollak**: "You cannot limit what we say. We have a 1st and 14th Amendment right . . . . [T]his is a public forum, this is a public comment, you can't stop me." *Id.* ¶ 15.

---

[2] Because there is no transcript of the Board Meeting, we look to Mr. Pollak's declaration. *See* Aplee. Br. at 12 n.4.

**The Chair**: "This is a meeting in the public, it is not for the public." *Id.* at 32-33 ¶ 16.

**Mr. Pollak**: "Mr. Stults addressed these items last month, I'm addressing them this month." *Id.*

**The Chair**: "I'm going . . . to have to ask you to leave because we don't discuss personnel matters at a Board meeting open session." *Id.*

**Mr. Pollak**: "This is not a personnel matter. . . . [H]e is sitting back here making a comment, I'm rebutting his comment." *Id.* "So, you're not going to let me finish?" *Id.*

**The Chair**: "No I'm not because it's a personnel matter." *Id.*

**Mr. Pollak**: "So, you're going to violate my 1st and 14th Amendment, right?" *Id.* at 33 ¶ 17.

**The Chair**: "If you see it that way." *Id.* "The law states you can not speak about personnel. So you have a choice, you can either . . . ." *Id.* ¶ 18.

**Mr. Pollak**: "You have a piece of paper you typed above a section in which I signed up to speak . . . . [T]here was nothing in the Constitution that says you can prevent me from speaking my opinion or having free speech." *Id.* ¶ 19.

**The Chair**: "Is there someone who can escort him out of the building if he's not going to do it on his own?" *Id.* ¶ 20.

**Mr. Pollak**: "[Y]ou're not going to let me finish my comment, It's a public comment?" *Id.* ¶ 21.

**The Chair**: "[Y]ou're speaking about Mr. Stults, that's all there is to be said. You have a choice." *Id.*

**Mr. Pollak**: "He represented himself and this Board . . . last month, I have a right." *Id.* ¶ 22.

**The Chair**: "Once again you can talk on something else or leave the meeting. We are not talking about Mr. Stults." *Id.*

Mr. Pollak then asked the Chair which policy prevented him from speaking.

*Id.* at 34 ¶¶ 23-24. Superintendent Stults replied that speech about personnel matters was

prohibited. *Id.* ¶ 26. When the Chair told Mr. Pollak that his time was up, he objected, claiming he had been "interrupted." *Id.* at 35 ¶ 35. The Board then voted for a recess and contacted the police to remove Mr. Pollak. *Id.* at 35-36 ¶¶ 36-37. Mr. Pollak eventually left with police officers. *Id.* at 36 ¶ 38.

In support of its opposition brief, the Board provided emails that Mr. Pollak had sent to the Board before the February meeting seeking the trustees' and the Superintendent's resignation. Suppl. App. at 51-53, 54-55, 62-64. Superintendent Stults also provided a declaration to the district court detailing Mr. Pollak's opposition to a COVID 19 face-covering requirement that the Board had implemented in August 2021. *Id.* at 33-47.

2. **Parties' Arguments**

Mr. Pollak's brief in support of a preliminary injunction first argued he was likely to succeed on the merits of his First Amendment claim. He "concede[d]" that the Board meeting was a "limited public forum or nonpublic forum" and that the Board could impose restrictions that were "reasonable and viewpoint-neutral." *Id.* at 51 (quotations omitted). But he asserted that the Board's "policy against discussion of personnel matters is unconstitutional on its face, and the[] enforcement of it is nothing but a cloak for viewpoint discrimination." *Id.* at 56. Mr. Pollak argued the Board engaged in viewpoint-based discrimination because the Chair said "favorable comments about school employees [were] welcome, while unfavorable speech was a banned 'personnel matter.'" *Id.* at 54-55.

9

Mr. Pollak next argued that (1) irreparable harm should be "presumed" because he had shown a likelihood of success on the merits, *id.* at 56-57; (2) the balance of harms "automatically favor[ed]" him, *id.* at 57; and (3) the public interest "must favor" him because "it's always in the public interest to prevent the violation of a party's constitutional rights," *id.* at 57-58 (quotations omitted). He requested that the district court order the Board to eliminate the Policy's ban on: (1) discussion of personnel matters during public comment, (2) speech based on gossip, (3) defamatory remarks, and (4) abusive or offensive language. *Id.* at 59.

In response, the Board asserted that the personnel-matter restriction is reasonable because it "protects school district employees from having personal or confidential information about their employment discussed in public." *Id.* at 26-27. The Board also argued that the restriction "prevents issues pertaining to the evaluation of the performance of school district employees from being addressed in public." *Id.* at 27. It explained that the Policy allows employment issues "to be addressed under other established school district policies." *Id.*

The Board also argued the restriction is viewpoint neutral because it "simply removes issues pertaining to personnel, whether they are positive or negative, as a topic that may be discussed." *Id.* The Board noted that executive sessions provide an alternative channel for a member of the public to raise a personnel matter, and that "[t]his portion of the policy gives the public an opportunity to make the board aware of important issues, and at the same time protects confidential information about employees from public disclosure." *Id.*

10

Finally, the Board argued that the Policy's ban on offensive language is "necessary to ensure that school board meetings can be conducted in an orderly, efficient and dignified matter." *Id.* at 30. It explained that the purpose of the restriction is to prevent "conduct that is detrimental to the purpose of the board meeting." *Id.*

### E. *District Court's Order*

The district court denied Mr. Pollak's motion for a preliminary injunction because he had not shown a likelihood of success on the merits of his First Amendment claim. It did not evaluate the other factors required to grant a preliminary injunction.

The court began by identifying the nature of Mr. Pollak's First Amendment challenge. It explained that Mr. Pollak "argue[d] that the policy's personnel and offensive language restrictions amount[ed] to viewpoint-based discrimination, because the chair said, you're not allowed to talk about personnel unless its favorable things, we always like to hear those." App. at 119 (quotations omitted). The court further noted that Mr. Pollak requested removal of "the *policy* restrictions," thus, "the subject of his injunction [request did] not relate to verbal instruction at one meeting." *Id.* It also said "[t]here [was] no evidence or allegation here that the Board stopped [Mr. Pollak] because he was speaking *negatively* about personnel matters." *Id.* The district court therefore interpreted Mr. Pollak's First Amendment claim as raising a facial challenge to the Policy.

The court proceeded to evaluate whether Mr. Pollak had shown he was likely to succeed on the merits of his claim. It noted the parties' agreement that the Board meeting

11

was a nonpublic or limited public forum and therefore the Policy's restrictions had to be viewpoint neutral and reasonable to satisfy the First Amendment. *Id.* at 121-22.

The court determined the personnel-matter restriction is viewpoint neutral because it "restricts the discussion of *all* personnel matters." *Id.* at 122. It rejected Mr. Pollak's argument that, because the Chair suggested that favorable comments about personnel were allowed, the Policy was viewpoint-based. *Id.* at 119. The court explained that "without a showing that individuals were in fact permitted to discuss favorable personnel matters," the Chair's remarks were "not enough to transform a facially viewpoint-neutral restriction into a viewpoint-based restriction." *Id.*

The court next concluded that the Policy's personnel-matter restriction is reasonable "given the school district's interest in keeping personnel matters from being discussed during public comment." *Id.* at 122. It noted the Board's arguments that the restriction prevented public discussion of district employees' confidential or personal information, as well as issues pertaining to their performance evaluations. *Id.* The court recognized that the Board's private executive sessions provide an alternative forum to discuss personnel issues. *Id.* at 123.

Finally, the court determined that the Policy's prohibition against "participat[ing] in gossip, mak[ing] defamatory remarks, [or] us[ing] abusive or vulgar language" is viewpoint neutral and reasonable "to maintain civility and order." *Id.* at 123.

## II.  DISCUSSION

On appeal, Mr. Pollak argues that the district court erred in denying his motion for a preliminary injunction. He contends the district court (A) misapplied preliminary

injunction standards and (B) erred in concluding he was unlikely to succeed with his

challenges to the Policy.

We review the district court's denial of a preliminary injunction for abuse of

discretion. *See Benisek*, 138 S. Ct. at 1943, 1945. "A district court's decision crosses the

abuse-of-discretion line if it rests on an erroneous legal conclusion or lacks a rational

basis in the record." *Courthouse News Serv. v. N.M. Admin. Off. of Cts.*, 53 F.4th 1245,

1254 (10th Cir. 2022) (quotations omitted). "[W]e thus examine the court's factual

findings for clear error and its legal conclusions de novo." *Id.* at 1255 (quotations

omitted).

We hold that the district court did not abuse its discretion.[3]

### A. *Mr. Pollak's Challenges to the District Court's Application of Preliminary Injunction Standards*

Mr. Pollak asserts that the district court misapplied the test for preliminary

injunctions by improperly allocating the burden of showing likelihood of success and

imposing a heightened standard on him. We disagree.

First, Mr. Pollak argues the district court improperly placed the burden on him,

rather than the Board. *See* Aplt. Br. at 8-9. As previously noted, the Board had the

burden to establish the Policy's constitutionality, and if it failed to do so, Mr. Pollak

would have shown a likelihood of success on the merits of his First Amendment claim.

---

[3] We note that the Board has not moved, and therefore the district court has not decided, to dismiss this action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim or to grant summary judgment under Rule 56, so we remand to the district court for further proceedings.

*See Gonzales*, 546 U.S. at 429; *Awad*, 670 F.3d at 1129. But the court evaluated the Board's arguments and concluded the Board showed the Policy is constitutional. *See* App. at 122; *see also id.* at 76-79. The court thus correctly required the Board to establish the Policy's constitutionality before concluding that Mr. Pollak had not shown a likelihood of success on the merits.

Second, Mr. Pollak argues the district court applied a heightened standard to his request for a preliminary injunction. According to Mr. Pollak, the district court erred by (a) saying that a preliminary injunction "is an extraordinary and drastic remedy" and (b) "impl[ying] . . . he would have to make a heightened showing on all four factors." Aplt. Br. at 11-12. The court did not err. Our case law establishes that a preliminary injunction is an extraordinary remedy. *See Harmon*, 981 F.3d at 1146. And the court did not require Mr. Pollak to make a heightened showing. It quoted our precedent identifying the four elements required to grant a preliminary injunction and that certain disfavored injunctions require the movant to make a heightened showing. App. at 118 (quoting *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208, 1209 (10th Cir. 2009)). But the court never said that Mr. Pollak sought a disfavored injunction nor did it apply a heightened standard.

The district court thus did not improperly allocate the burdens or apply a heightened standard, so Mr. Pollak's arguments fail.

### B. *Mr. Pollak's Facial Challenges to the School Board Policy*

Mr. Pollak challenges the Policy's (1) restriction against discussion of personnel matters and (2) ban on the use of abusive language.

1.  **Personnel-Matter Restriction**

The parties agree that the Board Meeting was a limited public forum, *see* Aplt. Br. at 14-15; Aplee. Br. at 21, where restrictions on speech are constitutional if they are viewpoint neutral and reasonable, *see Martinez*, 561 U.S. at 685.  The personnel-matter restriction satisfies both requirements.

In his brief, Mr. Pollak summarizes his argument:  "The district court erred as a matter of law when it held that the portion of Policy BEDH that proscribes speech on personnel matters at school board meetings was reasonable and viewpoint neutral."  Aplt. Br. at 8.  Mr. Pollak asserts that "the policy on its face was unconstitutional."  *Id.* at 14; *see also id.* at 21 ("Defendants bear the burden of proving their policies – written and *ad hoc* – to be constitutional."); *id.* at 21-22 ("The[] policy against discussion of personnel matters is unconstitutional on its face . . . ."); *id.* at 23 ("The restrictions of Policy BEDH (facially or as orally modified) are not reasonable.").  Mr. Pollak thus challenges the Policy's personnel-matter restriction on its face.

a.  *Viewpoint neutral*

The personnel-matter restriction is viewpoint neutral.  The Policy says: "Personnel matters are not appropriate topics to be discussed at regular board meetings." App. at 26.  It thus prohibits the discussion of a subject—personnel matters—but does not draw a distinction based on viewpoint.

Mr. Pollak asserts that we should not only evaluate the Policy as written but should also consider the Chair's remark that favorable personnel speech was allowed. *See* Aplt. Br. at 14.  He says:  "Policy BEDH, as modified by the [Chair's comment that

15

favorable speech about personnel was allowed], discriminated against speech on the basis of viewpoint.  Construed that way, it made no difference if favorable comments about personnel were actually allowed to be made, because the policy on its face was unconstitutional."  *Id.*; *see also id.* at 25 ("[The Policy] was not viewpoint neutral, . . . as it was modified orally by the Chair to invite favorable personnel comments.").  He thus argues that the Chair's remark modified the written Policy and made it a viewpoint-based restriction on its face.  His argument fails.

The Chair had no authority to modify Board policies on her own, so her comment did not reflect state Board policy.  Mr. Pollak asserts that the Chair's comment amounted to Board policy because it was "an official statement of a[] final policy maker."  *Id.* at 13.  He points to the Board's "admi[ssion] that official action of the Board of Trustees constitutes final decision making and/or policy making authority."  App. at 19 ¶ 18.  But the Chair's comment was not Board action.  Mr. Pollak fails to identify any authority showing that the Chair could unilaterally modify Board policy.[4]  Indeed, Mr. Pollak seems to concede this point, stating "the technicalities for amending Board Policy" are irrelevant and all that matters is how "the public would take the chair's statement."  Aplt. Reply Br. at 2.

---

[4] The Board asserts that a majority of the Board must approve amending a policy, citing a Wyoming statute and a Board policy.  *See* Aplee. Br. at 26 (citing Wyo. Stat. § 21-3-110(a), Board Policy BGA).  The statute does not address amendments to Board policies and the policy is not in the record.

Because Mr. Pollak has not demonstrated that the Chair could unilaterally modify the Policy, we evaluate the Policy as written to address Mr. Pollak's facial challenge. As discussed, the text of the Policy is viewpoint neutral because it forbids discussion of all personnel matters, regardless of the speakers' perspective. Mr. Pollak's facial challenge to the personnel matters restriction thus fails.

b. *Reasonable*

The Policy is reasonable in light of the purpose of Board meetings. The Policy states that "Board meetings are conducted for the purpose of carrying out the official business of the school district." App. at 25. Nonetheless, it "provide[s] time at all meetings for citizens to" make "objective comments on school operations and programs." *Id.* In light of this purpose, the Policy reasonably prevents discussion of personnel matters during the public comment period. As the Board notes, permitting discussion of personnel matters could result in public disclosure of employees' personal information or issues related to their performance evaluations. Aplee. Br. at 22.

Other circuits have upheld as reasonable school boards' prohibition of discussing personnel matters at board meetings. *See Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 760 (5th Cir. 2010) (upholding policy prohibiting public comment on personnel matter as reasonable to protect student and teacher privacy and avoid public shaming); *Cipolla-Dennis v. Cnty. of Tompkins*, No. 21-712, 2022 WL 1237960, at *2 n.2 (2d Cir.

2022) (prohibiting discussion of personnel matters reasonably related to interest in limiting matters addressed during public comment period) (unpublished).[5]

Further, in determining whether a restriction is reasonable, the Supreme Court has instructed that viewpoint-neutral restrictions are "more creditworthy" if there are other avenues available for speech. *Martinez*, 561 U.S. at 690. Here, the Policy permits meeting attendees to discuss personnel matters during the Board's executive sessions, an option that was offered to Mr. Pollak. App. at 26, 33 ¶ 22.

Mr. Pollak relies on *Mesa v. White*, 197 F.3d 1041 (10th Cir. 2019). There, Mr. Mesa asked to speak at a county commission meeting. *Id.* at 1043. The commissioners denied the request, concluding the subject he wished to discuss could concern personnel or litigation, topics for closed meetings under the New Mexico Open Meetings Act (the "Act"). *Id.* The district court granted summary judgment, holding the meeting was a designated public forum subject to heightened scrutiny and that the denial of the request was content-neutral and a permissible time, place, and manner restriction. *Id.* at 1044. We reversed. *Id.* at 1048.

This court rejected the defendants' position that the exceptions in the Act for personnel and litigation were enough to show the restriction on Mr. Mesa served a significant government interest. *See id.* at 1046-47. The panel said "[t]he commissioners may well have an interest in discussing among themselves sensitive personnel or litigation matters, and the exceptions allow them to do that in certain situations," but "[i]t

---

[5] Cited for persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1(A).

is difficult to see, however, how that interest translates into a significant interest in restricting the public's ability to present its views on personnel or litigation matters at a public meeting." *Id.* at 1046.

This case is distinguishable from *Mesa*. First, *Mesa* concerned a restriction on speech in a designated public forum, and the test was whether the restriction served a significant government interest. Here, by contrast, the Board meeting was a limited public forum, and the test is whether the personnel-matter restriction is reasonable. *See Shero*, 510 F.3d at 1202 ("Any government restriction on speech in a limited public forum must only be reasonable in light of the purpose served by the forum and be viewpoint neutral."). Second, in *Mesa*, the defendants pointed only to the personnel and litigation exceptions in the Act without showing how the restriction on Mr. Mesa would serve a government interest. Here, the Board has explained that the personnel-matter restriction protects personal and performance evaluation information, thereby establishing the reasonableness of the Policy's personnel-matter restriction.[6]

---

[6] Mr. Pollak also cites out-of-circuit district court decisions that are inapposite. In *Gault v. City of Battle Creek*, 73 F. Supp. 2d 811 (W.D. Mich. 1999), the plaintiffs alleged the defendants violated their First Amendment rights by stopping their speech during city commission meetings. *Id.* at 812. The district court granted a preliminary injunction because the defendants had not shown the restrictions were narrowly drawn to advance a compelling state interest. *Id.* at 814. *Gault* differs from this case because it applied a higher standard of First Amendment scrutiny and here the Board met its lesser burden to show the Policy is reasonable. *Id.*

In *Leventhal v. Vista Unified School District*, 973 F. Supp. 951 (S.D. Cal. 1997), the court evaluated the plaintiffs' claim that a school district bylaw restricting "complaints or charges against District employees at open Board meetings" violated the First Amendment. *Id.* at 956 (quotations omitted). The court determined the bylaw unconstitutionally discriminated based on viewpoint because it allowed neutral views but

In sum, the Policy's personnel-matter restriction is reasonable in light of the purpose served by the Board meetings.

    c.  *Waived arguments*

In his brief, Mr. Pollak hints at other arguments, but they are not clearly stated or adequately developed. They are therefore waived.

Mr. Pollak asserts that the Board's "enforcement of [the Policy] is nothing but a cloak for viewpoint discrimination." Aplt. Br. at 22. He does not elaborate. In district court, he based this argument on the Board Chair's offhand remark about favorable personnel comments. On appeal, however, he "never explain[s] or support[s]" the "cloak" sentence and not once states that he is making an "as-applied" argument. *United States v. Munoz*, 812 F.3d 809, 821 n.12 (10th Cir. 2016). Instead, he asserts "the policy on its face [i]s unconstitutional." Aplt. Br. at 14; *see id.* at 21-22. He thus has "waived [this viewpoint challenge] by failing to develop" it. *Id.*; *see Kellogg v. Watts Guerra LLP*, 41 F.4th 1246, 1262 (10th Cir. 2022) (appellant waived argument because a "one-sentence contention doesn't adequately present an argument").[7]

---

prohibited negative views. *Id.* at 960-61. But here, as discussed, the personnel-matter restriction itself is viewpoint neutral.

[7] Apart from waiver, this argument would likely fail based on the record. Mr. Pollak never argues that the Board enforced the Policy against him based on his desire to express a positive or negative viewpoint about personnel. Nor does he assert that the Board permitted other speakers to express certain viewpoints about personnel but prevented him from doing so.

Instead, Mr. Pollak has maintained that the Board stopped him because he attempted to speak about a personnel matter, without his having indicated any viewpoint.

Mr. Pollak's "cloak" assertion also may suggest the Board used the personnel-matter restriction as pretext to stop otherwise protected speech.  He later says "[i]t . . . bears mentioning that" the Policy "was applied to him pretextually because he simply mentioned the name of the Superintendent."  Aplt. Br. at 31.  Whatever potential this argument may have, Mr. Pollak fails to explain or support it and thus has waived it through inadequate briefing.  *GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1213 (10th Cir. 2022) ("We routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief." (quotations and alterations omitted)); *Bimbo Bakeries USA, Inc. v. Sycamore*, 29 F.4th 630, 640 n.3 (10th Cir. 2022) (appellant waived argument by raising it "[i]n one sentence in its opening brief" and failing to cite or apply the legal framework); *Thomas v. Gibson*, 218 F.3d 1213, 1224 n.9 (10th Cir. 2000) (finding waiver where appellant made "three-sentence argument" and "fail[ed] to cite" or apply "the controlling framework").  Indeed, at oral argument Mr. Pollak "admit[ted] the [pretext] point is not clearly delineated."  Oral Arg. at 28:40-29:09.[8]

---

Aplt. Br. at 4; App. at 9 ¶ 14 (alleging the Chair "seized on the mention of Stults' name as making a comment on a personnel matter" to stop Mr. Pollak's speech).

[8] The dissent concludes that Mr. Pollak did not waive a pretext argument.  *See* Dissent at 1-2.  It cites a footnote where Mr. Pollak says "he was not speaking about a personnel matter at all."  Aplt. Br. at 14 n.6.  But, as with the sentences discussed above, he also does not explain or support this one.  The dissent also quotes Mr. Pollak's assertion that "[t]he last time [he] spoke out, he was hit with a pretextual enforcement of the rule against speaking against school personnel when was not even planning on talking about personnel."  Dissent at 2 (quoting Aplt. Br. at 2-3).  But Mr. Pollak makes this

Mr. Pollak also has waived any pretext argument by failing to adequately present one to the district court and not arguing plain error on appeal. *See Rocky Mountain Peace & Just. Ctr. v. U.S. Fish & Wildlife Serv.*, 40 F.4th 1133, 1158 (10th Cir. 2022) ("[W]e may not reverse the district court's judgment in *this* case based on theories coined for the first time only on appeal unless [the appellant] makes a showing of plain error—something [it] has not even attempted." (quotations omitted)). His preliminary injunction brief before the district court raised a facial challenge to the personnel-matter restriction. *See* App. at 55 (personnel-matter restriction not constitutional just because it allowed discussion of personnel matters in closed sessions); *id.* at 59 ("The board should be ordered to remove [the personnel-matter] restriction[] from [the] Policy."). The word "pretext" never appeared in his brief. The district court reasonably understood Mr. Pollak to be raising a facial challenge. *See* App. at 119-123.

At the district court's hearing on the preliminary injunction motion, Mr. Pollak asserted the Policy "was used in a pretextual manner" because he "wasn't planning on discussing a personnel issue." App. at 86. But "[t]o preserve an issue for appeal, a party must alert the district court to the issue and seek a ruling—a party does not preserve an issue merely . . . by making a fleeting contention before the district court." *GeoMetWatch*, 38 F.4th at 1206 (quotations and alterations omitted). And "we do not address arguments raised in the District Court in a perfunctory and underdeveloped

---

assertion in challenging the offensive-language restriction, not the personnel-matter restriction. *See* Aplt. Br. at 2-3.

22

manner." *Id.* (quotations and alterations omitted).  As noted, neither did the district court.

Beyond the "fleeting contention," Mr. Pollak did not develop a pretext argument.  *Id.*  He

has thus waived any pretext theory by failing to adequately present it to the district court

and failing to argue plain error on appeal.

Even if we overlook Mr. Pollak's waiver, his pretext argument would likely fail

based on the record and therefore not support a preliminary injunction.  The dissent says

that "Mr. Pollak was shut down for merely stating the school superintendent's name."

Dissent at 1.  But context here matters.  Mr. Pollak and his wife together sent emails to

the Superintendent and the Board in advance of the meeting calling for their immediate

resignations and demanding an end to the COVID 19 mask mandate, Suppl. App.

at 51-64.  And in his declaration, Mr. Pollak indicated he would have called for the Board

members' resignation at the meeting if they refused to implement certain policies.  *See*

App. at 37-38 ¶ 42.  This explains the Chair's invocation of the personnel-matter

restriction and shows that doing so was bona fide, reasonable, and not pretextual.

Also, in his declaration, Mr. Pollak admitted the Chair told him that he "ha[d] a

choice," *Id.* at 33 ¶¶ 18, 21, could "talk on something else," *id.* ¶ 22, and further that

Superintendent Stults said he was "certainly welcome" "to speak about . . . another

matter," *id.* at 34 ¶ 26.  The dissent points to Mr. Pollak's assertion that "[he] no longer

had a right to speak."  *Id.* at 32 ¶ 14; *see also* Dissent at 1.  But Mr. Pollak's declaration

shows the Board repeatedly indicated Mr. Pollak could speak on a non-personnel matter.[9]

_____

[9] Mr. Pollak has not challenged the Board's restriction on speaking about matters
in litigation.  *See* App. at 31 ¶ 5, 39.  In his declaration, he first said that he "was not

Mr. Pollak has thus waived any as-applied or pretext arguments, and those arguments would likely fail based on the record.[10]

\*     \*     \*     \*

We agree with the district court that the Board has shown the personnel-matter restriction is viewpoint neutral and reasonable.  The court thus did not abuse its discretion in concluding that Mr. Pollak had not shown a substantial likelihood of success on the merits of this claim.  We do not reach the other preliminary injunction factors.  *See Nova Health Sys. v. Edmondson*, 460 F.3d 1295, 1299 (10th Cir. 2006) (affirming denial of preliminary injunction because plaintiff failed to show likelihood of success on the merits and not reaching other factors).

---

intending" to speak on such matters, *id.* at 31 ¶ 6, but at the end of his declaration he seemed to indicate that he was, *id.* at 36-38 ¶¶ 41-42.

[10] We review only whether the district court abused its discretion in denying Mr. Pollak's request for a preliminary injunction.  Mr. Pollak has a heavier burden to secure this "extraordinary remedy," *Benisek*, 138 S. Ct. at 1943, than to avoid dismissal of this suit.  *See New Hope Fam. Servs., Inc. v. Poole*, 966 F.3d 145, 165 (2d Cir. 2020) (there is a "heavier burden" for a plaintiff to secure a preliminary injunction than to "plead[] the plausible claim necessary to avoid dismissal"); *compare Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) ("[T]o receive a preliminary injunction, the plaintiff must establish . . . a substantial likelihood of prevailing on the merits" and the plaintiff's "right to relief must be clear and unequivocal." (quotations omitted), *with Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 765 (10th Cir. 2021) (in reviewing a Rule 12(b)(6) dismissal de novo, "[w]e accept all well-pleaded factual allegations in the complaint as true" and "view them in the light most favorable to the nonmoving party") (quotations and alterations omitted).  We express no view on whether Mr. Pollak may pursue viewpoint or pretext arguments after this case returns to the district court.

2. **Abusive-Language Restriction**

Mr. Pollak also challenges the Policy's restriction against "abusive" language. Aplt. Br. at 33-34.[11]  He lacks standing to challenge this provision.

To establish Article III standing, Mr. Pollak must show he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quotations omitted).

Mr. Pollak has not established an injury in fact.  To satisfy this requirement, "a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 339 (quotations omitted).  Mr. Pollak did not allege any injury that he suffered due to this restriction.  The Board did not invoke it when it asked Mr. Pollak to leave, and Mr. Pollak did not use abusive language at the meeting or suggest he was going to use it. Although we explained in *Initiative & Referendum Institute v. Walker*, 450 F.3d 1082 (10th Cir. 2006), that "a chilling effect on the exercise of a plaintiff's First Amendment rights may amount to a judicially cognizable injury in fact," Mr. Pollak has not satisfied *Walker*'s relaxed First Amendment standing requirements.  *Id.* at 1088-89.  Mr. Pollak did not allege that he engaged or hopes to engage in abusive speech or that he does not intend to engage in abusive speech because of a credible threat of enforcement.  *See Peck*

---

[11] Mr. Pollak refers to this as the "offensive language" restriction, but the Policy does not prohibit "offensive" language.  Aplt. Br. at 33; *see also* App. at 26.

*v. McCann*, 43 F.4th 1116, 1129-30 (10th Cir. 2022) (discussing *Walker*, 450 F.3d at 1129-30).  He therefore lacks standing.

*     *     *     *

In sum, we conclude that (1) the Board has shown the Policy's personnel-matter restriction is viewpoint neutral and reasonable and (2) Mr. Pollak lacks standing to challenge the abusive-language restriction.  The district court thus did not abuse its discretion by denying Mr. Pollak's request for a preliminary injunction because he has not shown a substantial likelihood of success on the merits.

III.  **CONCLUSION**

We affirm the district court's denial of Mr. Pollak's request for a preliminary injunction.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

No. 22-8017, Harry Pollak v. Susan Wilson, et al.

**KELLY**, Circuit Judge, dissenting.

The district court missed the real issue. Mr. Pollak was shut down at the February 7, 2022 school board meeting for merely stating the school superintendent's name. As Mr. Pollak has repeatedly urged in the district court and now on appeal, he was not attempting to discuss a personnel matter. No one disputes that the school board may impose content restrictions in a limited public forum that are reasonable and viewpoint neutral. But to the extent that the mere mention of an administrator's name is deemed "personnel" and barred under the policy, the policy is overbroad. To the extent that the policy was otherwise invoked to prohibit Mr. Pollak from speaking, Mr. Pollak has made a strong case that its application was pretextual.

This court concludes that Mr. Pollak has waived the argument by not making an "as applied" challenge or adequately arguing that application of the policy was pretextual. I disagree. This court has noted the inherent fluidity between facial and as-applied requests for relief, acknowledging that claims may contain characteristics of each. See United States v. Sup. Ct. of N.M., 839 F.3d 888, 908 (10th Cir. 2016); see also Citizens United v. Fed. Elections Comm'n, 558 U.S. 310, 331 (2010) ("[T]he distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or . . . must always control the pleadings and disposition in every case . . . ."). At the meeting, Mr. Pollak told the board that he was not attempting to discuss a personnel matter and he has maintained this throughout the litigation. Aplt. App. 32, ¶¶ 14, 42–43; Aplt. Br. at 4–5. And the evidence suggests that the board adhered to the view that the

mere mention of an administrator's name violated the policy. Aplt. App. 35, ¶ 32. In his brief before the district court, Mr. Pollak reminded the district court of what occurred and cited authority which holds that a content neutral policy cannot be applied in a viewpoint discriminatory manner. Aplt. App. 42–43, 45, 52–53. At the preliminary injunction hearing, Mr. Pollak argued that the policy was being applied pretextually:

> The code that the board uses . . . was used in a pretextual manner against my client, who wasn't planning on discussing a personnel issue. But as soon as he entered — as soon as he uttered the person's name, that was used to shut down his speech. We think this, as applies to him, was unconstitutional under the First Amendment.

Aplt. App. 86; see also id. 93. And the school board's counsel conceded that if Mr. Pollak's speech did not pertain to personnel, he could have presented it that night, or at the next Board meeting. Aplt. App. 103–04; see also Aplee. App. 65. Though the court finds otherwise, I believe that statements in Mr. Pollak's brief make it clear that he has consistently maintained that the personnel policy could not be invoked at the mere mention of a school employee's name. Aplt. Br. 14 at n.6, 21–22, 31; Aplt. Reply Br. at 2–3 ("The last time appellant spoke out, he was hit with a pretextual enforcement of the rule against speaking against school personnel when was not even planning on talking about personnel.").

Though the court finds that this issue is waived, it also indicates that it would likely fail. In so finding, the court recounts the fact that Mr. Pollak was told that he could talk about something else, his planned comments pertained to topics that the Board would not entertain, and he had emailed the Superintendent and Board previously seeking their

2

resignations and an end to mask mandates.  From this, the court concludes that "this explains the Chair's invocation of the personnel-matter restriction and shows that doing so was bona fide, reasonable, and not pretextual."  I draw the exact opposite conclusion.  The fact that Mr. Pollak was told that he could talk about something else is belied by the fact that he wasn't allowed given the Chair's invocation of the ban on personnel discussions.  Aplt. App. 32, ¶ 14.  When Mr. Pollak offered not to mention Mr. Stults's name, he was told that his time was up.  Id. 35, ¶ 35.  And the fact that the Pollaks had complained to the Board before about personnel matters and the mask mandate in communications (the latest of which was a month before the meeting), does not eliminate the stated basis for the Chair's actions.  And while the Chair may have limited his comments on the basis of other policies, i.e., ongoing litigation, mask mandates, the constitutionality of the district's procedures, that simply is not what happened.[1]  From these facts, it is reasonable to conclude that the Board "simply seized on the personnel policy as an excuse for ejecting Plaintiff."  MacQuigg v. Albuquerque Pub. Schs. Bd. of Ed., No. 12-1137 MCA/KBM, 2015 WL 13659218, at *4 (D.N.M. Apr. 6, 2015).

Finally, even if Mr. Pollak had other avenues of communicating with the Superintendent and the Board, the possibility of alternative channels of communication alone cannot eliminate his rights in this limited public forum.  See Gresham v. Peterson, 225 F.3d 899, 906–07 (7th Cir. 2000) (discussing that in the public forum context, an

---

[1]  Indeed, Superintendent Stults would later invite Mr. Pollak to present his information at the Board meeting scheduled for April 11, 2022.  Aplee. App. 65.  Nothing suggests, however, that the Board would change its views concerning how it applied the personnel matters policy.

3

adequate alternative does not vitiate a First Amendment claim where the alternative does not allow the speaker to reach the targeted audience); Cornelius v. NAACP Legal Def. and Educ. Fund, Inc., 473 U.S. 788, 809 (1985) ("The reasonableness of the . . . restriction of access to a nonpublic forum must be assessed in the light of the purpose of the forum and all the surrounding circumstances."). Stated another way, having created the limited public forum, the Defendants are not then free to apply a policy to bar Mr. Pollak merely because he mentions the name of a school administrator.